RAMBEND REALTY CORP., et al.,
Defendants-Appellants,

v.

BACKSTREETS BAND, et al.,
Plaintiffs-Appellees.

No. 3–1084A265.

Court of Appeals of Indiana,
Third District.

Sept. 10, 1985.

Don G. Blackmond, John E. Doran, South Bend, for defendants-appellants.

Anthony J. Iemma, Iemma & Hughes, Elkhart, for plaintiffs-appellees.

GARRARD, Judge.

This action was brought to recover the value of stolen band instruments. The appellees are all members of a musical group known as Backstreets Band. On March 18, 1981, the band entered into an engagement contract with Rambend Realty Corp. (Rambend) which operates a Ramada Inn at South Bend, Indiana. By the terms of the contract the band was to perform in the Ramada lounge from 9:30 p.m. until 2:00 a.m. on June 1 through June 13, 1981. According to the contract the band was to be paid $2300 and its members were to be furnished four rooms at the inn for the duration of their engagement.

The band arrived at the inn about 11:00 p.m. on May 31, 1981, the evening before they were scheduled to begin performing. They had played there before so the band members unloaded their equipment from their vans and took it to the stage area as they had done in the past. They asked the food and beverage manager, Mr. Beal, to let them into the lounge and to turn on the lights. Beal propped open the lounge door to allow the band to bring in the equipment and turned up the lights.

By midnight or 12:30 a.m. the band had moved its instruments and equipment to the bandstand in the lounge. Burch, the bandleader, asked Beal to lock up the lounge and was told that at the time someone was working back in the kitchen but the doors would be secured when the woman left. The band members then retired for the night.

The next morning it was discovered that during the night someone had broken into the liquor cabinet in the bar. Then the band discovered some of its equipment was missing.

Following a bench trial judgment was entered in favor of the four band members who claimed losses.

Rambend's first contention on appeal is that the court erred in permitting the discovery depositions of two of the plaintiffs, John Stipe and Scott Longnecker, to be introduced into evidence in their absence.

■ Indiana Rules of Procedure, Trial Rule 32(A)(3) provides that the deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

"(b) that the witness is outside the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or

\*   \*   \*   \*   \*   \*

(e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used; . . . ."

Rambend principally argues that the depositions were not properly admissible under subsection (e). It appears that admission or exclusion of depositions on this ground is committed to the trial court's discretion. Thus, an abuse of discretion must be shown in order to establish reversible error. *Gates v. Rosenogle* (1983), Ind.App., 452 N.E.2d 467; *Cooper v. Indiana Gas & Water Co.* (1977), 173 Ind.App. 47, 362 N.E.2d 191.

In this case trial was to the court, so the appellees are aided by the presumption that the trial judge will disregard any incompetent evidence. *See, e.g., Marriage of Lopp* (1978), 268 Ind. 690, 378 N.E.2d 414, *cert. denied Lopp v. Lopp* (1979), 439 U.S. 1116, 99 S.Ct. 1023, 59 L.Ed.2d 76.

The depositions were offered only after the other plaintiffs had testified in person and been subject to cross examination. Moreover, it appears that the significance of the deposition testimony was to present some direct evidence concerning the stolen equipment of that deponent.

It was explained that Stipe and Longnecker were in Ohio and had a band en-

gagement to play the night of May 30, 1984. (Trial commenced May 29 and concluded on May 30). The court was urged to allow the depositions because. the size of their claims [1] did not justify them flying back in order to appear at trial.

We find no abuse of discretion in admission of the depositions. Furthermore, we find that TR 32(A)(3)(b) provides an alternative ground for their admissibility.

Here it is clear that both these plaintiffs were Ohio residents and were in Ohio at the time of trial in pursuit of their normal occupation.

Our rule tracks the federal rule with the substitution of our out-of-state jurisdictional limitation for the 100 mile limit contained in Federal Rule 32.

Construing the qualifying phrase "unless it appears that the absence of the witness was procured by the party offering the deposition," the court in *Weiss v. Weiner* (D.C.Md.1950), 10 F.R.D. 387, 389 said:

"The word 'procured' in this context would seem to imply that a party had collusively instigated or induced a witness to remove himself from being subjected to a subpoena to testify at the trial, or at least had unfairly and for an improper purpose deliberately absented himself shortly before the trial from the jurisdiction so he could not be examined."

Moreover, as Judge Charles Clark, the draftsman of the rules, explained in *Richmond v. Brooks* (2d Cir.1955), 227 F.2d 490, 492:

"The tactical burden assumed by the plaintiff in proceeding to trial in her [own] absence ... is likely to limit frequent resort to this course; but a suitor not able to afford a New York trip should not be denied all remedy here."

Despite some authority to the contrary,[2] this is the view espoused by Wright & Miller,[3] and the one we adopt. The court was entitled to look at the surrounding circumstances and admit the depositions pursuant to TR 32(A)(3)(b).

Rambend next complains of the introduction of plaintiff's exhibits 7–11 over its hearsay objection. The exhibits listed the stolen instruments and their purchase prices.

Burch testified that the lists were compiled at the request of defendant CNA Insurance Company and were submitted to it. The court indicated it would allow the exhibits as the claims submitted. We find no error in this. Moreover, as previously indicated, the trial court will be presumed to disregard any incompetent evidence.

Rambend's next assignment asserts that the court erred in determining that a bailment was created and that Rambend was negligent. Included is the contention that the court should have applied the provisions of IC 32–8–28–1 and 2 to plaintiffs' claim.[4]

We believe the term "guest" as used in the context of the statute ordinarily refers to one who is a paying patron of the inn or hotel. Although this may not always be the case, the term does denote one who is staying at the inn for his own purposes as opposed to the business purposes of the inn. *Cf. Nicholson's Mobile Home Sales, Inc. v. Schramm* (1975), 164 Ind. App. 598, 330 N.E.2d 785.

More importantly, it is apparent that the band instruments and equipment were not brought onto the premises in consequence of any guest or quasi-guest capacity of the members of the band. The equipment was there for the performance of the contractual services engaged by

---

1. Stipe recovered $284.80; Longnecker $644.15.

2. *See, e.g., King v. International Harvester Co.* (1971), 212 Va. 78, 181 S.E.2d 656.

3. 8 Wright & Miller, Federal Practice & Procedure, Section 2147.

4. These statutes limit the liability of innkeepers to their guests. IC 32–8–28–6 provides a " 'Guest' within the meaning of this act shall include transient guest, permanent guest, tenant, lodger or boarder."

Rambend. It was not taken to the band-members' rooms, or left in their vehicles. Under the evidence the court could correctly conclude that the claim was not governed by IC 32–8–28–1 et seq.

Moreover, and contrary to Rambend's assertion, the evidence sustained the finding of a bailment. In *Stubbs v. Hook* (1984), Ind.App., 467 N.E.2d 29, 31 the court noted that to create a bailment the property must be delivered into the bailee's exclusive possession and must be accepted by the bailee. The evidence before the court was sufficient to support as a reasonable inference that this is what occurred when the manager opened the lounge area and permitted the band to place its instruments and equipment there signifying that he would secure the area.

In *Hainey v. Zink* (1979), 182 Ind. App. 192, 394 N.E.2d 238, 241, the court stated that when goods were delivered in good condition and were returned in damaged condition, an inference arises that the damage was caused through the fault or neglect of the bailee. *See also Spencer v. Glover* (1980), Ind.App., 412 N.E.2d 870.[5] Here, of course, the goods were not returned at all. Furthermore, the court could have found negligence on the part of Rambend. The police investigation disclosed that none of the locked outer doors had been tampered with. The only unlocked door to the lounge was the entrance from the lobby which was about 30 feet from the hotel desk where a clerk was supposedly on duty throughout the night. In addition it appears that a security guard employed by Rambend was absent from the premises for about 45 minutes.

Under *Hainey* the burden was upon Rambend to establish its lack of negligence. We cannot say the court erred in concluding it failed to do so.

Finally, Rambend argues there was insufficient evidence of value of the missing equipment to support the damage awards. Again we must disagree.

As the court pointed out in *Floyd v. Jay Co. REMC* (1980), Ind.App., 405 N.E.2d 630, 633, less certainty is required to prove the amount of a loss than the fact that some loss occurred. In addition, on appeal uncertainty as to the exact amount of damages will be resolved against the wrongdoer. *Charlie Stuart Oldsmobile, Inc. v. Smith* (1976), 171 Ind. App. 315, 357 N.E.2d 247, 252.

Here the missing items were specifically established. There was evidence of the price paid for each item, its age and condition, and its replacement cost at the time of trial. In addition there was testimony from an insurance adjuster detailing depreciation factors the insurance company would apply on such equipment. It appears that the judgment entered by the court was within the evidence and was adequately supported by the evidence.

In their answer brief the band asserts the court erred in finding for the defendant CNA Insurance Company in their separate claim against it. We are unable to reach this contention since no motion to correct errors or statement in opposition to Rambend's motion was filed to preserve the question for appeal and we are affirming the judgment as to the appellant. TR 59(E) and (G).

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.

---

**5.** The bailment was one for mutual benefit. The benefit to Rambend was in the performance of the artists' contract. *See* 8 Am.Jur.2d, *Bailments,* Section 24, pp. 755–57.